**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION**

**AUDREY DURRANT,**

      **Plaintiff,**                                         **CASE NO.:**
                                                          **DIVISION:**

**v.**

**JOHNS HOPKINS ALL
CHILDREN'S HOSPITAL, INC.**

      **Defendant.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, AUDREY DURRANT, by and through her undersigned counsel, brings this action against Defendant, JOHNS HOPKINS ALL CHILDREN'S HOSPITAL, INC. and in support of her claims states as follows:

**JURISDICTION AND VENUE**

1.      This is an action for damages in excess of $50,000.00, exclusive of interest, fees, and costs, for violations of the Rehabilitation Act of 1973, as amended ("Rehab Act"), 29 U.S.C § 701 *et seq.* and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. Section 760.01 *et seq.*

2.      Venue is proper in Hillsborough County, because all of the events giving rise to these claims occurred in Hillsborough County, Florida.

**PARTIES**

3.      Plaintiff, AUDREY DURRANT (hereinafter "Plaintiff" or "Plaintiff Durrant") is a resident of Hillsborough County.

4.      Defendant, JOHNS HOPKINS ALL CHILDREN'S HOSPITAL (hereinafter "Defendant" or "The Hospital"), conducts business in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

5.      Plaintiff has satisfied all conditions precedent, or they have been waived.

6.      Plaintiff has retained the undersigned attorneys and agreed to pay them a fee.

7.      Plaintiff requests a jury trial for all issues so triable.

8.      At all times relevant, Plaintiff was an "employee" of Defendant within the meaning of the FCRA.

9.      At all times relevant, Defendant employed fifteen (15) or more employees. Thus Defendant is an "employer" within the meaning of the FCRA.

## FACTS

10.      Plaintiff Durrant began working for Tampa General Hospital ("TGH") as a Staff Pediatric Surgeon on or around August 2019.

11.      Plaintiff Durrant is a female with a disability.

12.      Plaintiff Durrant has medical conditions that substantially limit and continue to limit one or more of her major life activities.

13.      Plaintiff Durrant is a disabled individual who is diagnosed with the seizure disorder, Epilepsy.

14.      Defendant regarded Plaintiff Durrant as having such a disability/handicap.

15.      At all times relevant Defendant had actual, real, and constructive knowledge of Plaintiff Durrant's disabilities.

16.      Plaintiff Durrant's disabilities impacted one or more major life activities including, for example, her ability to walk, talk, perform manual tasks, and work.

17.    Plaintiff Durrant was, at all times relevant, treated by a medical professional and was prescribed and taking medication that adequately managed her disability.

18.    Plaintiff Durrant has an extensive history of said disabilities.

19.    At all times Plaintiff Durrant kept the Defendant up to date on her medical conditions, and Defendant knew that Plaintiff Durrant's medical conditions were serious and knew that they created a disability.

20.    Plaintiff Durrant was promised a medical staff position as Head of Pediatric Surgery.

21.    Plaintiff Durrant was welcomed in an email by Nicole Chandler, a Pediatric Surgeon at the Hospital, "I'd like to extend my personal welcome to the Tampa Bay area and to our group (although I know it is a bit premature."

22.    There have been numerous text messages and emails concerning the eventual leasing of Plaintiff Durrant.

23.    All Children's plan was to lease Plaintiff Durrant for the remainder of her contract with the University of South Florida ("USF")/TGH, and to bring her on as medical staff after her contract expired.

24.    The only reason Plaintiff Durrant was not immediately brought on as medical staff was because it was paper-wise "easier" for the Hospital's negotiations with USF/TGH.

25.    In Defendant's position statement it states that "by avoiding the need to bring Dr. Durrant on board as an All Children's employee, the arrangement would speed the transition and avoid administrative burdens on All Children's end."

26.    In that same document, several paragraphs later, it is stated that "even as a leased employee, though, Dr. Durrant would need to submit an application for approval to become part of the All Children's Medical Staff."

27.    The second statement is in direct odds with the earlier statement regarding relieving administrative burdens.

28.    There should be no need to put Plaintiff Durrant through the full credentialing process if she were to be leased through the expiration of her current contract with USF/TGH.

29.    This opinion is supplemented by Natalie Potochney's May 29, 2020 email to Plaintiff Durrant, regarding the same.

30.    Additionally, in an email to Mark Moseley from Paul Danielson, Mr. Danielson points out that the plan with Plaintiff Durrant is to lease her during the end of her USF/TGH contract term and then to bring her on as full medical staff.

31.    Mr. Danielson said that if she was employed immediately, there would be several obstacles on the Defendant's side- they would have to create a position, get the necessary approvals during a COVID-19 hiring freeze, and give her the contract which her lawyer would want to review.

32.    At no point in any documentation was it stated that Plaintiff Durrant was not being brought on as full-time medical staff.

33.    All documentation shows that Plaintiff Durrant was being brought on as full-time medical staff at the expiration of her USF/TGH lease.

34.    This statement is confirmed in Plaintiff Durrant's email to Dr. Paul Kao when she states, "repeatedly I am being re-assured that I am part of the new contract- that I will be leased until the end of my contract and then I will become an equal part of the ACH team."

35. Once Defendant learned of Plaintiff Durrant's disability, the Hospital changed its plan completely and dropped Plaintiff Durrant entirely from negotiations.

36. This is direct discrimination based on disability.

37. Plaintiff objected to Defendant's discrimination of her, based upon her disability.

38. However, in discrimination of Plaintiff, due to her disability, and in retaliation for Plaintiff objecting to this discrimination, Defendant moved forward with their decision to cease all discussions and negotiations regarding Plaintiff's official hiring.

39. The Hospital discriminated against Plaintiff Durrant because of her disability by immediately ceasing all discussions regarding Plaintiff Durrant's official hiring.

40. This discrimination has caused Plaintiff Durrant to suffer significant monetary loss.

41. The above represents only a portion of the discriminatory treatment that Plaintiff Durrant was subjected to and continues to be subjected to and is only a brief summary of Defendant's on-going violations of the Florida Civil Rights Act.

42. Plaintiff Durrant is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant has engaged in other discriminatory and harassing practices against her which are not yet fully known.

43. Plaintiff Durrant has dual-filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

**COUNT I**
**DISABILITY DISCRIMINATION - REHABILITATION ACT**

44. Plaintiff re-alleges and readopts the allegations of paragraphs 5 through 7 and 10 through 43 of this Complaint, as though fully set forth herein.

45. Defendant acted intentionally, in bad faith and with malice and reckless

disregard for Plaintiff's rights under the Rehabilitation Act.

46.    Defendant engaged in unlawful employment practices prohibited by the Rehabilitation Act, including treating Plaintiff adversely because of her disability.

47.    Plaintiff is "handicapped" within the meaning of the Rehabilitation Act and relevant regulations.

48.    Plaintiff was "otherwise qualified" for her position.

49.    Defendant received federal financial assistance.

50.    As a result of the Defendant's unlawful employment practices the Plaintiff has suffered damage, including, the loss of a career with the Defendant, lost wages, benefits, and other compensation, harm to her personal and professional reputation, emotional distress, and other pecuniary and non-pecuniary losses.

51.    The Plaintiff has hired the undersigned lawyers and agreed to pay them a fee.

**WHEREFORE**, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and that this Court take jurisdiction over the case;

(c) Compensation for lost wages, benefits, and other remuneration;

(d) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay, and the value of lost employment benefits;

(e) Compensatory damages, including emotional distress, allowable at law;

(f) Punitive damages;

(g) Prejudgment interest on all monetary recovery obtained;

(h) All costs and attorney's fees incurred in prosecuting these claims; and

(i) For such further relief as the Court deems just and equitable.

## COUNT II
### RETALIATION – REHABILITIATION ACT

52.    Plaintiff re-alleges paragraphs 5 through 7, 10 through 15, and 34 through 37, as though set forth fully herein.

53.    The foregoing actions of Defendant constitute retaliation in violation of the Rehabilitation Act.

54.    Plaintiff engaged in protected activity as defined by the Rehabilitation Act.

55.    Plaintiff suffered a materially adverse employment action as a result of engaging in such activity.

56.    Defendant's actions were willful and done with malice.

57.    Plaintiff has suffered loss of wages and other employment benefits and emotional pain, anguish, and hurt because of the actions of Defendant.

**WHEREFORE**, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and that this Court take jurisdiction over the case;

(c) Compensation for lost wages, benefits, and other remuneration;

(d) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay, and the value of lost employment benefits;

(e) Compensatory damages, including emotional distress, allowable at law;

(f) Punitive damages;

(g) Prejudgment interest on all monetary recovery obtained;

(h) All costs and attorney's fees incurred in prosecuting these claims; and

(i) For such further relief as the Court deems just and equitable.

## COUNT III
### DISABILITY DISCRIMINATION/HARASSMENT – FCRA

58.    Plaintiff Durrant re-alleges paragraphs 5 through 43, as though set forth fully herein.

59.    Plaintiff is a member of a protected class under the FCRA, due to her disability.

60.    At all times relevant Defendant has known and continues to know of Plaintiff Durrant's medical conditions and disabilities.

61.    Plaintiff was subjected to disparate treatment on the basis of handicap, disability, and/or perceived handicap/disability.

62.    Defendant discriminated against Plaintiff because of her disability by dropping Plaintiff from employment negotiations due to Plaintiff's disability.

63.    Defendant discriminated against Plaintiff because of her disability by immediately ceasing all discussions regarding Plaintiff's official hiring due to Plaintiff's disability.

64.    Plaintiff was qualified for the employment position with Defendant for which she sought.

65.    Defendant directly discriminated against Plaintiff based on Plaintiff's disability.

66.    Defendant, through its agents and/or supervisors, engaged in a pattern and practice of unlawful discrimination by subjecting Plaintiff Durrant to discrimination and harassment based on her disabilities and/or being perceived as having said disabilities in violation of Chapter 760.

67.    Defendant, at all times relevant hereto, had actual and constructive knowledge of the conduct described in paragraphs 6 through 43.

68.    As a result of the discriminatory and harassing actions perpetrated by Defendant and maintained by Defendant's failure to protect Plaintiff Durrant from further discrimination and harassment, Plaintiff Durrant suffered and continues to suffer real emotional distress.

69.    Defendant violated Chapter 760 by failing to adequately supervise, control, discipline and/or otherwise penalize the conduct, acts and failures to act of their employees and management as described in paragraphs 6 through 43.

70.    Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination and harassment from the workplace and to prevent it from occurring in the future.

71.    Defendant's actions were willful and done with malice.

72.    Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and that this Court take jurisdiction over this case;

(c) Compensation for lost wages, benefits, and other remuneration;

(d) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

(e) Any other compensatory damages, including emotional distress, allowable at law;

(f) Punitive damages;

(g) Prejudgment interest on all monetary recovery obtained;

(h) All costs and attorney's fees incurred in prosecuting these claims; and

(i) For such further relief as this Court deems just and equitable.

## COUNT IV
## RETALIATION – FCRA

73.    Plaintiff re-alleges and readopts paragraphs 5 through 15 and 34 through 37 of this Complaint as if fully set forth herein.

74.    Plaintiff is a member of a protected class under the FCRA.

75.    Plaintiff engaged in protected activity under the FCRA by opposing the discrimination.

76.    Defendant retaliated against Plaintiff for engaging in protected activity under the FCRA.

77.    Specifically, Defendant moved forward with dropping Plaintiff from contract negotiations and ceasing all discussions regarding Defendant's hiring of Plaintiff.

78.    Defendant's actions were willful and done with malice.

79.    Defendant took material adverse action against Plaintiff.

80.    Plaintiff was injured by Defendant's violations of the FCRA, for which Plaintiff is entitled to legal and injunctive relief.

WHEREFORE, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and that this Court take jurisdiction over this case;

(c) Compensation for lost wages, benefits, and other remuneration;

(d) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

(e) Any other compensatory damages, including emotional distress, allowable at law;

(f) Punitive damages;

(g) Prejudgment interest on all monetary recovery obtained;

(h) All costs and attorney's fees incurred in prosecuting these claims; and

(i) For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues.

Dated this 9th day of May, 2023

Respectfully Submitted,

*/s/ Brandon J. Hill*
BRANDON J. HILL
Florida Bar Number: 0037061
Direct Dial: 813-337-7992
WENZEL FENTON CABASSA, P.A.
1110 N. Florida Ave., Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: aketelsen@wfclaw.com
***Co-Counsel for Plaintiff,***
***Audrey Durrant***
